IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELIE M. MIMS, et al.,

   Plaintiffs,

      v.

WRIGHT MEDICAL
TECHNOLOGY, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-213-TWT

ORDER

This is a products liability action. It is before the Court on the Defendant's Combined Motion to Dismiss and Motion for Summary Judgment [Doc. 87]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion.

I. Background

Plaintiff Elie Mims ("Mims") is a seventy-five year old blueberry farmer. (E. Mims Dep. at 7, 41.) In May 2006, Mims underwent a total hip arthroplasty (the "Surgery"), in which his right hip joint was replaced with a ProFemur hip implant (the "Device") manufactured by Defendant Wright Medical Technology ("WMT"), including a ProFemur Plasma-Z Modular Femoral Stem (the "Stem") and ProFemur

Neck (the "Neck"). (E. Mims Dep. at 32; Doc. 51, at 9.) Dr. Scott Corpe performed the Surgery. (Corpe Dep. at 9, 27.) On October 16, 2009, as Mims was walking to his truck, he felt a sudden pain in his right leg and fell backwards. (E. Mims Dep. at 60-62.) X-rays revealed that the Device was broken. (Id. at 66-67.) The Neck had fractured where it entered the Stem. (Truman Report, at 9-11.) The Neck fracture began at the location of the highest tensile stress concentration in the Neck-Stem-body transition during physical activity. (Id. at 11.) The fracture occurred due to fatigue over a period of time, which initiated and slowly progressed to cover approximately 60% of the cross-sectional area. (Id. at 12.) On October 18, 2009, Dr. Corpe performed a revision surgery on Mims' right hip.

The Plaintiffs, Elie Mims and Norma Mims, filed the Complaint against WMT in the State Court of Gwinnett County, Georgia, on December 21, 2010, and WMT removed the Complaint to this Court on January 21, 2011 [Doc. 1]. In the Complaint, the Plaintiffs argue that WMT defectively designed and manufactured the Device, and failed to adequately warn of the dangers of the Device. WMT filed this Combined Motion to Dismiss and Motion for Summary Judgment on January 26, 2012 [Doc. 87].

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and

affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Manufacturing Defect

The Plaintiffs stipulate to the absence of a manufacturing defect claim. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 4.) Any claim based upon a manufacturing defect is dismissed. The Plaintiffs have properly plead claims based upon a design defect and a failure to warn. The Court considers these claims pursuant to Rule 56.

### B. Design Defect

To establish strict liability, the Plaintiffs must show that "the property when sold by the manufacturer was not merchantable and reasonably suited to the use

intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1). "The existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product." Giordano v. Ford Motor Corp., 165 Ga. App. 644, 645 (1983). The Plaintiffs claim that the Device was defectively designed. Under Georgia law, "a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses." Chrysler Corp. v. Batten, 264 Ga. 723, 724 (1994). To determine whether a product is defective as designed, the risks inherent in the product's design are balanced against the utility derived from the product. Banks v. ICI Americas, Inc., 264 Ga. 732, 734 (1994). In response to a summary judgment motion, the Plaintiffs "have the burden to demonstrate a genuine issue of material fact that [the Device] is defectively designed; to do this, they must produce evidence from an expert who is qualified to conduct the risk-utility analysis and to opine that the risks inherent in [the Device's] design outweigh the utility or benefit derived from the product." In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig., 711 F. Supp. 2d 1348, 1365 (M.D. Ga. 2010 ).

"One factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs, in that the existence and feasibility

of a safer and equally efficacious design diminishes the justification for using a challenged design. The alternative safer design factor reflects the reality that [i]t often is not possible to determine whether a safer design would have averted a particular injury without considering whether an alternative design was feasible. The essential inquiry, therefore, is whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware." Banks, 264 Ga. at 735-36 (internal citations omitted). "Alternative safe design factors include: the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative." Id. at 736 n.6.

The Plaintiffs' expert, Dr. Mari Truman, states that the Defendant unreasonably dismissed an alternative safer design when creating the Device. (Truman Report, at 22, 23, 35-38.) Dr. Truman states that WMT should have used cobalt-chrome alloys instead of titanium alloys in the Neck of the Device, as cobalt-chrome alloys have a higher fatigue strength, lower sensitivity to notching, and are not as prone to corrosion fatigue. (Id. at 19-20, 26.) Dr. Truman also states that WMT should have used surface coatings, such as low plasticity burnishing or laser shock peening, to improve the Device's fatigue strength and inhibit crack formation and crack propagation. (Id. at 25-26.)

The Defendant argues that because Dr. Truman only discusses one risk-utility factor–an alternative feasible and safer design–that the Plaintiffs cannot demonstrate a strong enough case to survive summary judgment. The Court disagrees. The list of risk-utility factors is "merely illustrative." Davenport v. Ford Motor Co., No. 1:05-CV-3047, 2007 WL 4373601, at *3 (N.D. Ga. Dec. 12, 2007) (denying defendants' summary judgment motion even though plaintiff did not present evidence on each of the Banks risk-utility factors). Whether the manufacturer chose a design that was reasonable from the options it knew or should have known were available is at the "heart" of design defect cases. Banks, 264 Ga. at 736; Jones v. NordicTrack, Inc., 274 Ga. 115, 118 (Ga. 2001). "In general, and as noted in the Banks opinion, the weighing of the risk-utility factors is to be done *by the trier of fact*." Dean v. Toyota Industrial Equipment Mfg., Inc., 246 Ga. App. 255, 259 (2000) (emphasis in original). Judgment as a matter of law "will rarely be granted in design defect cases when any of [the] elements is disputed." Ogletree v. Navistar Int'l Transp. Corp., 271 Ga. 644, 646 (1999) (internal quotation marks omitted); see also Dean, 246 Ga. App. at 259. To prevail at summary judgment, a defendant must "show plainly and indisputably an absence of *any* evidence that a product as designed is defective." Id. (emphasis in original).

Moreover, the Defendant argues that Dr. Truman's position regarding cobalt-

chrome alloys is not supported by her own references, and that her position regarding surface treatments to increase the strength of the components lacks any meaningful analysis or basis. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 5.)  Both of these arguments should be made in a Motion to Exclude Dr. Truman's Testimony. Federal Rule of Evidence 702 governs the admission of expert opinion testimony. Pursuant to that rule, before admitting expert testimony a court must consider: (1) whether the expert is qualified to competently testify regarding the matters he intends to address; (2) whether the methodology used to reach his conclusions is sufficiently reliable; and (3) whether the testimony is relevant, in that it assists the jury to understand the evidence or determine a fact in issue. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The party offering the expert's testimony has the burden to prove it is admissible by a preponderance of the evidence. Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).  The Defendant questions the reliability of Dr. Truman's report. Daubert sets forth a list of non-exclusive factors to consider in making the reliability determination. Daubert, 509 U.S. at 593-94 (factors include whether expert's technique has been tested, whether theory has been subjected to peer review, potential rate of error, and general acceptance in scientific community).  However, the Court will not consider the reliability of Dr. Truman's report in the Defendant's Motion for Summary Judgment,

as long as Dr. Truman's conclusions create a "genuine" issue of material fact.

The Court intuits that the Defendant assaults the reliability of Dr. Truman's report in the hopes that the Court will find that any issue of material fact is not "genuine." An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; ... The judge's inquiry, therefore, unavoidably asks where reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id. at 252. If Dr. Truman is introduced as an expert in this field, and discusses her conclusion that the Device was defectively designed, a reasonable jury could return a verdict for the Plaintiffs. The Court will not grant summary judgment on this claim.

C. Failure to Warn

"To establish a claim for failure to warn, the plaintiff must show the defendant had a duty to warn, the defendant breached that duty and the breach was the proximate cause of the plaintiff's injury. The duty to warn an end user of a risk associated with product use arises when the manufacturer knows or reasonably should know of a danger arising from product use." Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1362-63 (N.D. Ga. 1999) (citations omitted). WMT does not dispute that it reasonably should have known if its Device was unsuited for active individuals

weighing approximately 250 pounds.

"Under Georgia law, a manufacturer breaches its duty to warn if it fails to (1) 'adequately communicate the warning to the ultimate user or (2) fail[s] to provide an adequate warning of the product's potential risks.'" Watkins v. Ford, 190 F.3d 1213, 1219 (11th Cir. 1999)(citing Thornton v. E.I. DuPont De Nemours & Co., 22 F.3d 284, 289 (11th Cir. 1994)). Under the learned intermediary doctrine, WMT was not required to directly warn Mims of the risks of the Device because Dr. Corpe was a learned intermediary between the manufacturer and ultimate consumer; WMT could have adequately communicated the warning by only warning Dr. Corpe. See Dozier Crane & Machinery, Inc. v. Gibson, 284 Ga. App. 496, 498 (2007). The Defendant cites Rivers v. H.S. Beauty Queen, Inc., 306 Ga. App. 866 (2010) to support its claim that it adequately communicated its warning to the Plaintiff. This case is inapposite to the argument made by the Plaintiff, who does not contest the Defendant's assertion that before the Surgery he was made aware of the risks and consequences that were published by the Defendant, and the alternative methods of treatment.

Instead, Mims contends that the Defendant failed to provide him and his doctor with an adequate warning of the risks of using the Device. Mims does not contest the communication of the warning; he contests the warning's content. Mims claims that the Defendant failed to warn him or Dr. Corpe that a 250-pound, active individual

should not use the Device. (Corpe Dep. at 23; Truman Report, at 28; Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 18.) Mims claims that the Defendant's warning–against use in "obese" patients where "obesity is defined as three times normal body weight"–was insufficient. (Truman Report, at 35.) Mims also claims that the Defendant failed to warn him and Dr. Corpe that increased ion concentrations from metal-on-metal articulations would reduce the fatigue strength of the Neck. (Truman Report, at 21-22.) Mims contends that "had Defendant given sufficient warnings, Mims' doctor would not have implanted the ProFemur device, and Mims would not have suffered his serious injuries from the ProFemur's premature failure." (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 6-7.)

"Whether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury." Watson v. Uniden Corp. of America, 775 F.2d 1514, 1516 (11th Cir. 1985). The Court will not grant summary judgment on this claim.

D. Punitive Damages

Under Georgia law, punitive damages are available where "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). After reviewing the record, the Court

concludes that the Plaintiffs would not be able to establish by clear and convincing evidence culpable tortious conduct that would authorize the imposition of punitive damages. Taylor v. Powertel, Inc., 250 Ga. App. 356, 358 (2001). Moreover, punitive damages are typically not appropriate where the manufacturer has complied with regulatory standards. Stone Man, Inc. v. Green, 263 Ga. 470 (1993); Welch v. General Motors Corp., 949 F. Supp. 843 (N.D. Ga. 1996). The Plaintiffs' expert, Dr. Truman, agrees that WMT complied with regulatory standards, as it would otherwise not have been permitted to sell the Device. The Plaintiffs' punitive damages claim is dismissed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendant's Combined Motion to Dismiss and Motion for Summary Judgment Motion [Doc. 87].

SO ORDERED, this 11 day of May, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge